**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY and NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY | )<br>)<br>)<br>)<br>)<br>) | Case No. 4:10cv69 |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | |
| THE OVERLOOK, LLC, STEVEN A. MIDDLETON, VISTA MIDDLETON, LLC and RICKY L. EDMONDS, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

**RESPONSE OF PLAINTIFFS NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, AND NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY TO RICKY L. EDMONDS' MOTION FOR CERTIFICATION TO THE SUPREME COURT OF VIRGINIA**

COME NOW Plaintiffs Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company and National Property and Casualty Insurance Company (collectively "Nationwide"), by counsel, and as for their Memorandum in Response to Defendant Ricky L. Edmonds' ("Edmonds") Motion for Certification ("Edmonds' Motion"), state as follows.

**INTRODUCTION**

Pursuant to Rule 5:40(a) of the Rules of the Virginia Supreme Court, this Court may certify a question of law to the Virginia Supreme Court if the question is determinative and "it appears that there is no controlling precedent on point in the decisions of [the Virginia Supreme]

Court or the Court of Appeals of Virginia."[1] As set forth below, *City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*, 628 S.E.2d 539 (Va. 2006) is controlling precedent on point with respect to the pollution exclusion at issue in the pending motions for summary judgment in this case. This precedent requires entry of judgment for Nationwide because, as established in Nationwide's Memorandum of Law in Support of its Motion for Summary Judgment Based on the Pollution Exclusion ("Nationwide SJ Memo."), the plain language of the pollution exclusion, as applied in *City of Chesapeake*, excludes coverage for Edmonds' claims against the Overlook defendants.

Moreover, Virginia Supreme Court cases such as *Nationwide Mutual Insurance Co. v. Wenger*, 278 S.E.2d 874 (Va. 1981) and *City of Chesapeake* are controlling precedent on the issue of whether conflicting decisions from other jurisdictions may be considered evidence that policy language is ambiguous. They may not. Accordingly, Edmonds' Motion should be denied. If, however, this Court disagrees that there is controlling precedent on the pollution exclusion issue, then Nationwide respectfully suggests that the most procedurally preferred course is for this Court to await the disposition of the appeal pending before the Fourth Circuit in *Travco Insurance Company v. Ward*, Record No. 10-1710.

At the conclusion of the argument on the pending motions for summary judgment, Nationwide noted the Court's understandable expression of sympathy for homeowners whose homes were constructed with Chinese Drywall. It is perhaps appropriate in light of those comments to observe that this case is not about whether or to what extent homeowners, such as Mr. Edmonds, who claim to have been affected by Chinese Drywall will be able to obtain redress

---

[1] Edmonds' Motion purports to be based on Rule 5:42 of the Rules of the Virginia Supreme Court, but there is no Rule 5:42. It is assumed Edmonds' Motion is brought pursuant to Rule 5:40 of the Rules of the Virginia Supreme Court.

from the myriad parties – manufacturers, distributors, suppliers, importers, exporters, brokers, developers, builders, contractors and installers – they have asserted claims against. Rather, this case, just like *City of Chesapeake* and any other insurance coverage case, is a private contract dispute that concerns whether and to what extent an insurer is contractually obligated to provide coverage for claims asserted by and/or against its insured.

## ARGUMENT

### I. *City of Chesapeake* Is Controlling Precedent On Point With Respect To The Pollution Exclusion Issue In This Case.

As framed by the pending motions for summary judgment and the arguments of the parties at the summary judgment hearing, the core dispute, and the threshold issue in this case, is whether the pollution exclusion in the Nationwide Policies is limited only to so-called "traditional" environmental pollution. If the answer to this question is "no," and the pollution exclusion is instead applied according to its plain terms, then there appears to be no real disagreement that the exclusion precludes coverage for the claims at issue.

Nationwide respectfully suggests certification is not appropriate because the Virginia Supreme Court has already decided the issue in *City of Chesapeake, supra*, a decision which was itself based on a certified question. *City of Chesapeake* is controlling precedent on point with respect to the pollution exclusion issue in the pending summary judgment motions in this case for at least four reasons.

**First**, *City of Chesapeake* involved the *same* pollution exclusion as that contained in the Nationwide primary liability policies at issue in this case.[2] This exclusion precludes coverage for bodily injury or property damage:

---

[2] The pollution exclusions in the Nationwide excess liability insurance policies and the Nationwide property insurance coverages at issue are similar. *See, e.g.,* Nationwide SJ Memo. at 13-15.

3

> arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
>> (a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

Nationwide SJ Memo. at 13-14.

Also, as in *City of Chesapeake*, "pollutants" in the Nationwide primary liability policies at issue are defined as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *See City of Chesapeake*, 628 S.E.2d at 540-41.[3]

**Second** and most importantly, *City of Chesapeake* did ***not*** involve so-called "traditional environmental pollution." The underlying claims in *City of Chesapeake* involved 214 women who claimed to have suffered miscarriages as a result of drinking water supplied by the City of Chesapeake which contained trihalomethanes. *Id*. at 540. The trihalomethanes were *not* the byproduct of an industrial process, were *not* dumped into the water supply as part of a waste stream, and did *not* leach into the water supply from a contaminated landfill or from some other "traditional" source of so-called environmental pollution. Rather, the trihalomethanes were a byproduct of the city's treatment of the drinking water with chlorine, a beneficial, universally used method of ensuring that drinking water is sufficiently free of pathogens to be safe. [Affidavit of Seth V. Jackson in Support of Response of Plaintiffs Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company and National Property and Casualty Insurance Company to Ricky L. Edmonds' Motion for Certification to the Supreme Court of Virginia ("Jackson Aff."), Tab A at \*\*1, 6] Further, the underlying claimants claimed to have

---

[3] The Nationwide excess liability insurance policies and the Nationwide property insurance coverages at issue define "pollutants" identically or with minor variations. *See* Nationwide SJ Memo. at 12.

been exposed to the trihalomethanes while in their homes drinking tap water, a routine, commonplace and everyday indoor activity. Thus, *City of Chesapeake* is anything but a "traditional" environmental pollution case and Edmonds' contention that it "involved widespread outdoor pollution" is simply wrong. *See* Defendant Ricky L. Edmonds' Memorandum in Support of His Motion for Certification Pursuant to Rule 5:42 of the Rules of the Supreme Court of Virginia ("Edmonds' Memo.") at 3.

**Third**, in *City of Chesapeake*, the Virginia Supreme Court resolved the coverage issue through a very simple analysis – it applied the plain language of the exclusion to the allegations against the city and determined that, since the allegations fell within the language of the exclusion, there was no coverage. In reaching this conclusion, the Supreme Court pointedly refused to consider cases from other jurisdictions, "because the law of this Commonwealth and the plain language of the insurance policy provide the answer to the certified question." *City of Chesapeake*, 628 S.E.2d at 541-42.

**Fourth**, in *City of Chesapeake*, the Virginia Supreme Court expressly confronted and rejected extensive arguments, like those asserted here by Edmonds and the Overlook defendants, contending that the pollution exclusion is limited to so-called "traditional" environmental pollution. Attached as Tabs A to E of the Jackson Affidavit are all the appellate briefs filed in *City of Chesapeake*, including the *amicus* briefs filed. As set forth therein, both the City of Chesapeake and *amicus curiae* United Policyholders argued vehemently to the Virginia Supreme Court that the same pollution exclusion at issue here is limited to "traditional" environmental pollution and was therefore not applicable to the claims at issue. For example, the City of Chesapeake's primary and opening argument was that:

> In this case, the pollution exclusion's historical intent – to exclude coverage for traditional environmental damage and cleanup costs –

5

> is expressed in its unique language. That language, properly interpreted, does not apply to claims based on consumption of drinking water containing expected byproducts of beneficial water treatment, as opposed to claims based on substances that arrive in water because of a traditional environmental pollution event or mishap.

[Jackson Aff., Tab A at \*\*11] In fact, every argument offered by the City of Chesapeake to the Virginia Supreme Court was based, in one way or another, on the assertion that the pollution exclusion did not apply because it was limited to "traditional" environmental pollution. [*Id*. at \*\*11-33] Similarly, the brief filed by the United Policyholders argued at length that "so-called absolute and total pollution exclusions do not bar coverage for claims outside of the context of traditional, long-term industrial pollution – claims such as those alleged against the City of Chesapeake."[4] [Jackson Aff., Tab B at 7]

      Against this backdrop, particularly the clear statement from the Virginia Supreme Court in *City of Chesapeake* that the "plain language of the insurance policy" provided the answer, it is not difficult to understand why in subsequent cases involving similar or identical pollution exclusions this Court found: 1) home heating oil is a "pollutant" under a policy issued to a home heating oil delivery company (*West American Ins. Co. v. Johns Brothers, Inc.*, 435 F. Supp. 2d 511 (E.D. Va. 2006)); 2) bodily injury claims of pneumonitis and bronchitis based on indoor air exposure to "noxious" fumes from a concrete sealant are barred by the pollution exclusion (*Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779 (E.D. Va. 2007)); and 3) claims by homeowners, like Mr. Edmonds, based upon noxious

---

[4] The amicus brief of the United Policyholders also made a number of (misleading and irrelevant) arguments regarding the alleged drafting of the exclusion and its purported regulatory history. [*See* generally Jackson Aff., Tab B] These arguments did not even merit discussion by the Virginia Supreme Court in *City of Chesapeake*.

fumes from Chinese Drywall are barred by the pollution exclusion (*Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010)).[5]

Further, a Virginia Circuit Court very recently issued a decision relying on *City of Chesapeake* and confirming Nationwide's interpretation of *City of Chesapeake*. In *PBM Nutritionals v. Lexington Insurance Co.*, 2011 Va. Cir. LEXIS 16 (Va. Cir. Ct., City of Richmond, January 7, 2011), the insured was a manufacturer of infant formula. During a cleaning operation, steam seeped into a heat exchanger which caused process water to exceed the boiling point. As a result, water filters "disintegrated" into their constituent parts: cellulose, melamine and "other filter materials." *PBM Nutritionals*, 2011 Va. Cir. LEXIS 16 at *3. When formula production resumed, some of the batches of formula were found to be contaminated with melamine and others with "filter components." *Id*. at *4. Despite a definition in the insurance policy of "Contaminants or Pollutants" which included specific references to materials deemed hazardous substances "as listed in [the] Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act," the court rejected the insured's argument that the exclusion was limited to "traditional" environmental pollution, finding that the insurers:

> more persuasively focus on *Firemen's Ins. Co. v. Kline & Son Cement Repair*, in which the Eastern District of Virginia noted "[t]he Supreme Court of Virginia did not expressly limit [the application of the pollution exclusion]. . . to cases involving

---

[5] It is also worth noting that none of these decisions (*City of Chesapeake, Johns Brothers, Kline* or *Ward*) focused their analysis on whether the application of the pollution exclusion would lead to an absurd or "unreasonable" result. The reason is obvious – there is nothing absurd or unreasonable about applying the plain terms of the exclusion to preclude coverage for "toxic" and "noxious" fumes which allegedly cause bodily injury and/or property damage. *See Kline* and *Ward*. Accordingly, Edmonds' reliance on *Granite State Ins. Co. v. Bottoms*, 415 S.E.2d 131 (Va. 1992) is unavailing, even if one assumes that the Court's oblique reference to the "overbroad" nature of the exclusion established a new and independent test for construing contracts. In fact, the Court's fundamental conclusion in *Granite State* was that the exclusion was ambiguous as applied to the facts of the case. This is the bedrock interpretive principle, a point which this court in *Kline* emphasized. 474 F. Supp. 2d at 791. Here, the exclusion unambiguously applies to Edmonds' Chinese Drywall claims, just as it did in *Ward*.

7

> 'traditional' environmental pollution, and there is no reason to believe that it would do so . . ." 474 F. Supp. 2d 779, 796 (E.D. Va. 2007) (citing *City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*, 271 Va. 574, 579, 628 S.E.2d 539, 542 (2006). This recent case points out how the Supreme Court refrained from interpreting the insurance contract pollution exclusion as limited to "traditional environmental pollution," and rather employed traditional rules of construction.

*Id.* at *17.

It is also telling that there is not a single case decided under Virginia law since *City of Chesapeake* which either Edmonds or the Overlook defendants have cited suggesting that a pollution exclusion like that in the Nationwide Policies is limited to "traditional" environmental pollution. Undoubtedly, the reason for this absence is because *Johns Brothers*, *Kline*, and especially *Ward*, a case directly on point, were all decided based on the Virginia Supreme Court's holding in *City of Chesapeake*, thus resolving the issue by refusing to deviate from the plain language of the pollution exclusion and impose limitations not found in the policy language. Under these circumstances, the standard for certification to the Virginia Supreme Court is not met and Edmonds' Motion should be denied.

## II. Virginia Supreme Court Precedent On Point Rejects Reliance On Conflicting Decisions From Other Jurisdictions As Evidence Of Ambiguity.

Edmonds' request that this Court certify a question as to whether conflicting decisions from state and federal courts in other jurisdictions may be considered in deciding whether policy language is ambiguous under Virginia law should be summarily rejected as contrary to Virginia Supreme Court precedent directly on point. Edmonds' Motion at 5-6.

In *Nationwide Mutual Insurance Co. v. Wenger*, 278 S.E.2d 874, 877 (Va. 1981), the Virginia Supreme Court stated:

> As a final argument, appellees . . . contend that when a policy is interpreted in a different manner by a number of jurisdictions this in itself creates an ambiguity which then must be construed against

8

>the insurance company. However, the majority rule, which Virginia adheres to, is that an ambiguity, if one exists, must be found on the face of the policy….

*See also City of Chesapeake*, 628 S.E.2d at 541-42 ("In their respective arguments, the parties asked the Court to examine how other jurisdictions have resolved similar insurance contract disputes. It is unnecessary to do so, however, because the law of this Commonwealth and the plain language of the insurance policy provide the answer to the certified question.").

Consistent therewith, the Court in *Kline*, *supra*, expressly rejected reliance on cases from other jurisdictions in applying the pollution exclusion to bodily injury claims arising from fumes released by a floor sealant. *Kline*, 474 F. Supp. 2d at 799 ("[U]nder Virginia law, an insurance policy is not ambiguous merely because courts of varying jurisdictions differ with respect to the construction of policy language") (citing *Wenger*). *See also PBM Nutritionals*, 2011 Va. Cir. LEXIS 16 at *18 (rejecting argument that pollution exclusion is limited only to "environmental" pollution and explaining that "split of opinion on this matter among different jurisdictions around the country. . . in and of itself does not create an ambiguity warranting construction in favor of the insured"). The standard for certification to the Virginia Supreme Court on this issue is also not satisfied and Edmonds' Motion should be denied.

### III. If The Court Disagrees That *City of Chesapeake* Is Controlling Precedent, Then The Court Should Await Resolution of the Appeal in *Ward*.

As all parties recognized at the argument of the pending summary judgment motions in this case, the Fourth Circuit's resolution of *Ward* may provide significant guidance in this case.[6] Further, the Fourth Circuit in *Ward* has been asked by the Appellant Ward and by *amicus curiae*

---

[6] The policies at issue in *Ward* are first party property policies. In this case, both first and third party (liability) policies are at issue. As set forth in its summary judgment motion, Nationwide's position is that the pollution exclusion applies to exclude coverage under both lines of policies, a position with which the District Court in *Ward* implicitly agreed.

National Association of Home Builders to consider certification, in the alternative. [Jackson Aff., Tabs F at 49-50 and G at 28-29, respectively] Accordingly, if this Court believes that *City of Chesapeake* is not controlling precedent, then as a matter of judicial economy and efficiency, it makes sense to ascertain how the Fourth Circuit resolves the appeal, including the request for certification, before making a decision on certification in this case.

IV. **The Court Should Reject The Certification Questions As Framed By Edmonds.**

Finally, if the Court decides to certify this matter to the Virginia Supreme Court, Nationwide objects to the questions as framed by Edmonds on the grounds they are argumentative. Instead, Nationwide proposes that an appropriate certified question concerning the pollution exclusion issue, essentially tracking the certified question in *City of Chesapeake*, is the following:

> Is coverage excluded under the pollution exclusion contained in the Nationwide policies at issue for claims made by homeowner Ricky Edmonds against developer Overlook LLC for alleged bodily injury and property damage sustained as a result of exposure to fumes from the Chinese Drywall in Edmonds' home.

DATED: March 23, 2011      Respectfully submitted,

NATIONWIDE MUTUAL INSURANCE
COMPANY, NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY and NATIONWIDE
PROPERTY & CASUALTY INSURANCE
COMPANY

By    /s/ Grant E. Kronenberg
Lawrence A. Dunn
Virginia State Bar No. 30324
Grant E. Kronenberg
Virginia State Bar No. 65647
*Attorneys for Plaintiffs*
MORRIS & MORRIS P.C.
700 East Main Street, Suite 1100
P.O. Box 30

10

          Richmond, VA 23218-0030
          Tel: (804) 344-8300
          Fax: (804) 344-8359
          LDunn@morrismorris.com
          gkronenberg@morrismorris.com

Catherine M. Colinvaux *(Pro Hac Vice)*
Karl S. Vasiloff (*Pro Hac Vice*)
Seth V. Jackson *(Pro Hac Vice)*
*Attorneys for Plaintiffs*
ZELLE HOFMANN VOELBEL & MASON LLP
950 Winter Street
Suite 1300
Waltham, MA 02451
Tel: (781) 466-0700
Fax: (781) 466-0701
ccolinvaux@zelle.com
sjackson@zelle.com

Scott J. Ryskoski *(Pro Hac Vice)*
*Attorneys for Plaintiffs*
RYSKOSKI LAW P.L.L.C.
556 Silicon Drive
Suite 100
Southlake, TX 76092
Tel: (817) 310-3527
Fax: (817) 310-0141
sjr@ryskoskilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2011, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which then sent notification of such filing (NEF) to the following:

John Janney Rasmussen, Esq.
*Attorneys for Defendants*
*The Overlook, LLC, Steven A. Middleton,*
*Vista Middleton, LLC*
INSURANCE RECOVERY LAW
GROUP PLC
3015 East Broad Street
P.O. Box 8049
Richmond, VA 23223
Tel: (804) 308-1359
Fax: (804) 308-1349
jjr@insurance-recovery.com

Michael F. Imprevento, Esq.
John W. Drescher, Esq.
Jeffrey A. Breit, Esq.
*Attorneys for Defendant Ricky L. Edmonds*
BREIT, DRESCHER, IMPREVENTO &
WALKER, P.C.
1000 Dominion Tower
999 Waterside Drive
Norfolk, VA 23510
Tel: (757) 622-6000
Fax: (757) 670-3939
mimprevento@breitdrescher.com
jdrescher@breitdrescher.com
jbreit@bdbmail.com

Richard James Serpe, Esq.
*Attorneys for Defendant Ricky L. Edmonds*
LAW OFFICES OF RICHARD L. SERPE,
P.C.
580 E Main Street
Suite 310
Norfolk, VA 23510
Tel: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

    /s/
Grant E. Kronenberg
Virginia State Bar No. 65647
*Attorneys for Plaintiffs*
MORRIS & MORRIS P.C.
700 East Main Street, Suite 1100
P.O. Box 30
Richmond, VA 23218-0030
Tel: (804) 344-8300
Fax: (804) 344-8359
gkronenberg@morrismorris.com