```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF VIRGINIA
                 Newport News Division
```

NATIONWIDE MUTUAL INSURANCE
COMPANY, and

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, and

NATIONWIDE PROPERTY & CASUALTY
INSURANCE COMPANY,

      Plaintiffs,

v.                                         Civil Action No. 4:10cv69

THE OVERLOOK, LLC, and

STEVEN A. MIDDLETON, and

VISTA MIDDLETON, LLC, and

RICKY L. EDMONDS,

      Defendants.

## ORDER OF CERTIFICATION

Upon consideration of the issues raised in this action, the Court concludes that a determinative question of law should be certified to the Supreme Court of Virginia for its consideration. Pursuant to Article VI, Section 1 of the Constitution of Virginia, and Rule 5:40 of the Rules of the Supreme Court of Virginia, this Court respectfully tenders the following information for consideration.

## I. The Nature of the Controversy in Which the Question Arises

This certified question arises from an insurance coverage dispute. This dispute turns on the question of whether a "pollution exclusion" in the relevant insurance policies excludes from coverage damages resulting from defective drywall imported from China and installed in homes by The Overlook, LLC ("Overlook"). Overlook is a real estate developer that owned real property in Richmond, Virginia, where it developed a townhouse complex. After construction, Overlook sold several of these townhomes and continued to maintain ownership of the unsold units. Of the units sold, one was purchased by Ricky L. Edmonds ("Edmonds"), a Defendant in this action.

By April or May 2009, Overlook became aware that defective drywall imported from China may have been installed in some of the homes it constructed. While the parties dispute the exact method by which such defective drywall causes damage, it is undisputed that such drywall is problematic in a home and should be removed. In a May 22, 2009 letter that Overlook sent the owners of its townhomes, it encouraged the owners to have their homes inspected at Overlook's expense. Where the homes were found to contain the defective drywall, Overlook told the owners that it would work with them to develop an appropriate remediation plan. Many owners accepted this offer of remediation, and Overlook subsequently removed and replaced the

2

drywall and other property in the affected homes. In return, the owners of the repaired homes signed agreements releasing Overlook from claims and liabilities arising out of the defective drywall. Overlook also removed and replaced the affected drywall in the unsold units which it still owned. However, there is one unit that Overlook has not repaired - the unit owned by Edmonds.

Edmonds refused the offer from Overlook as unacceptable and has since filed or is participating in several lawsuits against Overlook, including suits in Virginia and Louisiana. As to the Virginia suit, on September 3, 2009, Edmonds filed suit against Overlook and other defendants in the Circuit Court for the City of Norfolk, styled <u>Edmonds v. Parallel Design & Dev. L.L.C.</u>, Case No. CL09005697-00. While it is this suit that will be the focus of the certified question, there are over one hundred fifty (150) similar suits pending in the Norfolk Circuit Court involving homeowners alleging damage from defective drywall. In this suit, Edmonds claims that his family home was built with defective drywall. Due to this defect, the drywall allegedly emits various sulfide gases and/or other toxic chemicals through "off-gassing." According to Edmonds' Norfolk Circuit Court complaint, these gases create noxious odors, cause physical damage to the infrastructure of his home and endanger the health of individuals subject to exposure. Based on these allegations,

Edmonds asserted claims in twelve counts against Overlook, seeking at least $2,000,000 in compensatory damages.

At all times relevant to this action, Overlook was insured by various Nationwide entities (collectively "Nationwide"). Under the terms of the Nationwide liability policies issued to Overlook, Nationwide agrees to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Additionally, Nationwide "will have the right and duty to defend the insured against any 'suit' seeking those damages." On the basis of these insurance policies, Overlook has sought indemnification from Nationwide for the costs Overlook incurred in its completed drywall remediation efforts as well as any damages awarded in Edmonds' Norfolk Circuit Court suit. Additionally, Overlook seeks to have Nationwide provide a defense against Edmonds' lawsuits, pursuant to the "duty to defend" language in the liability coverages.

Nationwide is currently participating in Overlook's defense of the Edmonds lawsuit in Norfolk Circuit Court, subject to a reservation of rights. On January 19, 2010, Nationwide filed a Complaint in the United States District Court for the Eastern District of Virginia, Richmond Division, seeking a declaratory judgment that it has no duty to defend or indemnify Overlook for several reasons. The case was subsequently transferred to the

4

United States District Court for the Eastern District of Virginia, Newport News Division, where Nationwide filed a motion for partial summary judgment limited solely to the issue of whether the pollution exclusions in the relevant insurance policies exclude coverage. In response, both Overlook and Edmonds filed their own cross-motions for partial summary judgment raising the same issue.

Despite the differences between the various Nationwide insurance policies involved in the present action, they all contain similar pollution exclusions. All of the relevant coverages in the applicable Nationwide policies include a definition of the term "pollutants." Although there are minor wording variations across the policies, "pollutants" are generally defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (Certification Order, Ex. 1.B pg. OLLCC 06-07 53PR 140-682-3001 32). Additionally, the liability policies relevant to this action generally provide, once again with minor wording variations, that liability insurance "does not apply to:"

> 1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

> a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.
>
> ....
>
> d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor. However, this subparagraph does not apply to:
>
> (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor....

(Certification Order, Ex. 1.B pgs. OLLCC 06-07 53PR 140-682-3001 21-22).

Nationwide contends that the language in the pollution exclusion is unambiguous and therefore bars coverage for damage caused by sulfide gases emitted from defective drywall in the home. Overlook and Edmonds contend that the language in the pollution exclusion does not bar coverage in the present case because such language is ambiguous and is therefore construed against the insurer. Defendants Overlook and Edmonds claim that the pollution exclusion language is ambiguous as to whether it only applies to traditional environmental pollutants, or whether it includes non-traditional environmental pollutants such as gases released from defective drywall. Further, the Defendants argue that the pollution exclusion is both overbroad and

6

unreasonable. A question of law is therefore presented as to whether the pollution exclusion in the relevant insurance policies relieves Nationwide of the obligation to defend and indemnify Overlook with respect to the lawsuit brought by Edmonds in the Norfolk Circuit Court. Because many other pending state and federal court suits requiring application of Virginia law have similar issues involving this policy language, the ruling on this issue would provide helpful guidance.

## II. The Question of Law to Be Answered

In the pollution exclusion clause of the relevant insurance contracts, is the definition of "pollutant," as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste," ambiguous, 1) because it could be interpreted to apply only to traditional environmental pollutants, 2) because it is so broad that it could cover virtually any substance and potentially lead to absurd results, or 3) because it is substantively unreasonable?

## III. A Statement of All Facts Relevant to the Question Certified

In order to supplement the brief statement of facts provided in Section I, the Court respectfully submits the following memoranda and attachments thereto. Because the parties' summary judgment briefs are somewhat duplicative, and because this Court is aware that Rule 5:40(h) permits the

7

parties to brief the issues, the Court has only attached the briefs supporting the three summary judgment motions and the certification briefs.

| | |
|---|---|
| Exhibit 1: | Nationwide's Memorandum of Law in Support of its Motion for Summary Judgment (with Edmonds' state court complaint and a copy of one of Overlook's liability policies, which is representative of the various policies, attached respectively as Exhibits 1.A and 1.B) |
| Exhibit 2: | Overlook's Memorandum of Law in Support of its Motion for Summary Judgment |
| Exhibit 3: | Edmonds' Memorandum of Law in Support of his Motion for Summary Judgment (titled Defendant Ricky L. Edmonds' Reply Memorandum) |
| Exhibit 4: | Edmonds' Memorandum in Support of his Motion for Certification |
| Exhibit 5: | Nationwide's Response to Motion for Certification |

### IV. The Names of Each of the Parties Involved

| | |
|---|---|
| Plaintiffs: | Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, and Nationwide Property & Casualty Insurance Company |
| Defendants: | The Overlook, LLC, Steven A. Middleton, Vista Middleton, LLC and Ricky L. Edmonds |

### V. The Name, Virginia State Bar Number, Mailing Address, Telephone Number, Facsimile Number, and E-Mail Address of Counsel for Each of the Parties Involved

Counsel for Plaintiffs: Lawrence A. Dunn (VSB # 30324)
Grant E. Kronenberg (VSB # 65647)
Morris & Morris P.C.
700 East Main Street
Suite 1100
PO Box 30
Richmond, VA 23218
Phone: (804) 344-8300

Fax: (804) 344-8359
Email:ldunn@morrismorris.com
Email:gkronenberg@morrismorris.com

Catherine Colinvaux (Pro Hac Vice)
Karl S. Vasiloff (Pro Hac Vice)
Seth Jackson (Pro Hac Vice)
Zelle Hofmann Voelbel & Mason LLC
950 Winter Street
Suite 1300
Waltham, MA 02451
Phone: (781) 466-0700
Fax: (781) 466-0701
Email: ccolinvaux@zelle.com
Email: kvasiloff@zelle.com
Email: sjackson@zelle.com

Scott Jay Ryskoski (Pro Hac Vice)
Ryskoski Law PLLC
556 Silicon Drive
Suite 100
Southlake, TX 76092
Phone: (817) 310-3527
Fax: (817) 310-0141
Email: sjr@ryskoskilaw.com

| | |
|---|---|
| <u>Counsel for Defendants:</u><br><u>The Overlook, LLC</u><br><u>Steven A. Middleton,</u><br><u>Vista Middleton, LLC</u> | John J. Rasmussen (VSB # 45787)<br>Insurance Recovery Law Group PLC<br>3015 East Broad Street<br>PO Box 8049<br>Richmond, VA 23223<br>Phone: (804) 308-1359<br>Fax: (804) 308-1349<br>Email: jjr@insurance-recovery.com |
| <u>Counsel for Defendant</u><br><u>Ricky L. Edmonds</u> | Richard J. Serpe (VSB # 33340)<br>Law Offices of Richard J. Serpe, P.C.<br>580 East Main Street<br>Suite 310<br>Norfolk, VA 23510<br>Phone: (757) 233-0009<br>Fax: (757) 233-0455<br>Email: rserpe@serpefirm.com<br><br>Frederick S. Longer (Pro Hac Vice)<br>Levin Fishbein Sedran & Berman |

9


510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Email: flonger@lfsblaw.com

Jeffrey A. Breit (VSB # 18876)
John W. Drescher (VSB # 13656)
Michael F. Imprevento (VSB # 23926)
Breit, Drescher, & Imprevento P.C.
1000 Dominion Tower
999 Waterside Drive
Norfolk, VA 23510-3320
Phone: (757) 670-3884
Fax: (757) 299-8035
Email: jbreit@bdbmail.com
Email: jdrescher@breitdrescher.com
Email: mimprevento@breitdrescher.com

## VI. A Brief Statement Explaining How the Certified Question of Law is Determinative of the Proceeding in the Certifying Court

The case presently pending before the Court implicates two distinct sets of claims. However, both sets of claims involve very similar, if not identical, pollution exclusions. The first set of claims deals with Nationwide's obligations to Overlook with respect to Edmonds' claims against Overlook. If the Court determines that the pollution exclusion applies to all of the claims asserted in Edmonds' lawsuit, Nationwide has no duty to defend or indemnify Overlook with respect to those claims. This determination can be made by comparing the language within the four corners of Edmonds' Norfolk Circuit Court complaint with the language within the four corners of a representative Nationwide policy, which this Court has attached to Exhibit 1.

This analysis is typically referred to as an "eight corners" analysis, and it would be dispositive on the duty to defend issue.

The second set of claims involves Nationwide's duty to indemnify Overlook for costs incurred during Overlook's remediation of its sold and unsold units. Since there are no pending underlying lawsuits involving those units, the determination of whether the pollution exclusion in the relevant insurance policies excludes voluntary remediation coverage cannot be resolved under an eight corners analysis, but would require further litigation. However, given the fact that the pollution exclusions relevant to those units are substantially similar, if not identical, to those relating to Edmonds, a decision on the Edmonds issue likely will be dispositive on the legal interpretation of the pollution exclusions relevant to those additional units.

## VII. A Brief Statement Setting Forth Relevant Decisions, If Any, of the Supreme Court of Virginia and the Court of Appeals of Virginia and the Reasons why Such Decisions Are Not Controlling

The parties have filed numerous memoranda of law in connection with their cross-motions for summary judgment on the legal interpretation of the pollution exclusion. In those memoranda, the Defendants have advanced three basic arguments to support their contention that the pollution exclusion does not bar coverage for damage caused by defective drywall.

In their first argument, the Defendants contend that the pollution exclusion only bars coverage for damage caused by traditional environmental pollutants. On this issue, the Court has not found any decisions by the Supreme Court of Virginia or the Court of Appeals of Virginia that directly address this point. The Court has found one relevant decision by the Supreme Court of Virginia that deals with a similar pollution exclusion. However, that exclusion was applied to a substantially different set of facts than those alleged in Edmonds' state-court complaint. In that case, City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc., 271 Va. 574 (2006), the Supreme Court of Virginia, also faced with a certified question, was asked whether claims by women who alleged that they all suffered miscarriages resulting from exposure to "THMs" in the City of Chesapeake's water supply were excluded from coverage by the pollution exclusion in a relevant insurance policy. Id. at 576. The definition of "pollutants" in the relevant policy in City of Chesapeake was identical to the definition of "pollutants" in the present case. See id. at 577-78. There, the Supreme Court of Virginia determined that the pollution exclusion was applicable to THMs in the water supply, and thus coverage was excluded. Id. at 578. However, for purposes of Defendants' arguments, there is one significant difference

between the case pending before this Court and City of Chesapeake.

City of Chesapeake dealt with a contaminant found in the city's water supply. Defendants argue that such a contaminant could be classified as a traditional environmental or industrial pollutant, which creates harm over a widespread area. Conversely, in the present case, sulfide gases are emitted from a piece of construction material purposely brought into a home, with the gas emissions limited to a localized indoor area. Defendants argue that such a situation is not the typical traditional environmental pollution scenario. While many courts throughout the country have concluded that a pollution exclusion similar to the one in the present case applies in situations such as this one, see, e.g., TRAVCO Ins. Co. v. Ward, 715 F. Supp. 2d 699, 718 (E.D. Va. 2010) (involving defective drywall), other courts have found that these types of exclusions can be reasonably read as only applying to more traditional environmental pollution, see, e.g., In re Chinese Manufactured Drywall Prods. Liab. Litig., MDL No. 2047 Section: L, 2010 U.S. Dist. LEXIS 133497, at *50-51 (E.D. La. Dec. 16, 2010) (involving defective drywall); cf. Unisun Ins. Co. v. Schulwolf, 53 Va. Cir. 220, 224-25 (Va. Cir. Ct. 2000) (involving lead-based paint). Although the City of Chesapeake opinion counseled against an examination of how other jurisdictions "have resolved

13

similar insurance contract disputes," this Court is not aware of any Virginia appellate decision addressing the application of a pollution exclusion in a non-traditional pollution scenario. City of Chesapeake, 271 Va. at 579.

The Defendants' second argument asserts that the pollution exclusion in the relevant policies is so overbroad that a plain meaning application of the exclusion would lead to absurd results. Similar arguments have been made to courts throughout the country, and in response, many courts have imposed limiting constructions on similar pollution exclusions. In Pipefitters Welfare Education Fund v. Westchester Fire Insurance Co., 976 F.2d 1037 (7th Cir. 1992), the United States Court of Appeals for the Seventh Circuit explained the reasoning behind this limiting principle when it stated, "[w]ithout some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results." Id. at 1043. While Defendants have not directed this Court to any case where the Supreme Court of Virginia applied this limiting principle to a pollution exclusion, in Granite State Insurance Co. v. Bottoms, 243 Va. 228 (1992), a case involving a different exclusion, the Supreme Court of Virginia did state that "because of the ambiguous, overbroad nature of the exclusion, we will construe the policy language in a manner which grants coverage, rather than one which withholds it." Id.

at 235. As a result, it is unclear whether a limiting construction should be placed on a pollution exclusion if there is a finding that failing to do so would result in an overly broad and unintended application of that exclusion.

In the Defendants' third argument, they contend that the pollution exclusion does not bar coverage in the present case because such an application of the exclusion would be unreasonable. While the parties have not provided this Court with a case in which the Supreme Court of Virginia declined to apply an insurance exclusion because the exclusion was substantively unreasonable, the Defendants have pointed out that in Virginia Farm Bureau Mutual Insurance Co. v. Williams, 278 Va. 75 (2009), the Supreme Court noted that exclusions in an insurance contract must use language that is "reasonable, clear, and unambiguous." Id. at 81 (emphasis added). In the City of Chesapeake, on the other hand, the Court required "clear and unambiguous" terms. City of Chesapeake, 271 Va. at 578. Therefore, the Defendants argue that Williams imposed a substantive reasonableness component to the standard of consideration.

For the reasons set forth above, this Court requests that the Supreme Court of Virginia accept and answer the question certified herein. The Clerk is **DIRECTED** to forward this Order of Certification and the exhibits attached hereto under this

Court's official seal to the Supreme Court of Virginia. Defendants, having filed the motion, are **ORDERED** to pay the costs associated with this certified question pursuant to Rule 5:40(g) of the Rules of the Supreme Court of Virginia.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 12, 2011